UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
J.S.,

                        Plaintiff,

        - against -                        **MEMORANDUM AND ORDER**

JANICE M. KILLIAN, Warden at F.C.I.         11 Civ. 103 (NRB)
Otisville, Otisville, N.Y.; JOHN DOE
NO. 1, Segregation Review Official at
F.C.I. Otisville, Otisville, N.Y.,
in his individual capacity; DUDLEY
J. TERRELL, Warden at M.D.C.,
Brooklyn, N.Y.; JOHN DOE NO. 3,
Segregation Review Official at
M.D.C., Brooklyn, N.Y., in his
individual capacity,

                        Defendants.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Plaintiff, a federal inmate, seeks damages for his detention

in special housing units (SHUs) at two correctional facilities.  In

our Memorandum and Order of August 20, 2014, we held that plaintiff

had stated viable claims under the Due Process Clause (U.S. Const.

amend. V, cl. 4) against segregation review officials (SROs) at

both facilities, who had been named as John Doe defendants.  In the

pending motion, plaintiff seeks to amend his complaint under Rule

15(a)(2) of the Federal Rules of Civil Procedure in order to name

the three SROs responsible for his assignment to the SHUs.

        We grant plaintiff's motion for leave to amend because this

amendment is not futile as time-barred.  This amendment relates

back to the First Amended Complaint, which, we conclude, was timely as to all of plaintiff's claims through application of the continuing violation doctrine.

## I. BACKGROUND[1]

Between 2007 and 2010, plaintiff was incarcerated in the Federal Correctional Institution, Otisville ("Otisville"), and housed as a member of the Witness Security Program on account of his testimony against a criminal gang.  Between March and April 2010, officials of the Federal Bureau of Prisons (BOP) removed plaintiff from the Witness Security Program, denied plaintiff's appeal of his removal, and moved plaintiff to the SHU.

Plaintiff was placed in the Otisville SHU on April 19, 2010, and was held there until late July or August.[2]  During meetings with Teresa Welch, a counselor at Otisville, plaintiff asked why he was in the SHU and when he would be released.  He also asked Welch

---

[1] These facts are drawn from the Second Amended Complaint (ECF No. 19) and plaintiff's Declaration of April 11, 2014 (ECF No. 50), which we understand will serve as the factual basis for the Third Amended Complaint. Our Memorandum and Order of August 20, 2014 (2014 WL 4100589, 2014 U.S. Dist. LEXIS 116362, ECF No. 60) presented these allegations in detail, so we will describe only those facts that are necessary to this opinion.  For purposes of this memorandum, we assume all well-pleaded facts to be true.

[2] As we mentioned in our August 20, 2014 Memorandum and Order, the Second Amended Complaint is inconsistent regarding the duration of plaintiff's assignment to the Otisville SHU.  Compare Second Am. Compl. ¶ 37 with ¶ 86. We suggest that plaintiff clarify this in his Third Amended Complaint.

for grievance forms, which she refused to give him.  Instead, she assured plaintiff that he would be released from the SHU soon.[3]

On or about July 28, 2010, plaintiff was moved to the Metropolitan Detention Center, Brooklyn (the "MDC").  At the MDC, plaintiff filed grievances related to the conditions of his confinement, including a complaint that his placement in the SHU was unwarranted.[4]  In approximately October 2010,[5] MDC officials moved plaintiff from the SHU to the general population.

In November 2010, Plaintiff was transferred to a third correctional center, where he was placed in the general population.[6]

## II. PROCEDURAL HISTORY

Plaintiff filed a pro se complaint in this Court on December 30, 2010 (the "Original Complaint"), naming five federal employees

---

[3]According to a declaration previously submitted by defendants, plaintiff filed one grievance on June 25, 2010, regarding his access to the prison library.  See Johnson Decl. ¶ 13, ECF No. 44.

[4]Defendants have submitted a BP-9 form ("Request for Administrative Remedy") dated September 24, 2010, in which plaintiff stated: "I have not broken any rules[] to be put in the SHU.  I [am] entitled to get everything the other inmates get, such as[] TV, access to [a] law computer, personal phone calls, [and a] full commissary list."  Johnson Decl., Ex. 9, ECF No. 44-9.

[5]The Second Amended Complaint is inconsistent regarding the duration of plaintiff's assignment to the MDC SHU.  Compare Second Am. Compl. ¶¶ 89, 121 with ¶ 101.  The Second Amended Complaint is also inconsistent with a letter from the MDC warden indicating that plaintiff was removed from the SHU before October 14, 2010.  See Terrell Response, Admin. Remedy No. 608911-F1 (Oct. 14, 2010), filed as ECF No. 44 Ex. 10.

[6]Plaintiff was placed briefly in a SHU while on his way to his new facility, but does not alleged that this assignment violated his constitutional rights.

as defendants.  The Original Complaint alleged that the events at Otisville——particularly plaintiff's exclusion from the Witness Security Program——violated the Fifth and Eighth Amendments.  It appears that plaintiff did not know who the SROs were when he filed the Original Complaint.  Plaintiff's counsel has informed us that plaintiff filed a FOIA[7] request in September 2010 to discover the names of the SROs, but that the BOP replied unhelpfully with a list of 72 people, none of whom was actually the SRO at Otisville.[8]

We dismissed the Original Complaint nostra sponte.  Order, Feb. 9, 2011, ECF No. 8.  On appeal, the Second Circuit affirmed our dismissal with respect to plaintiff's termination from the Witness Security Program, but remanded the case for further proceedings regarding plaintiff's claims regarding his confinement in the SHU.  See J.S. v. T'Kach, 714 F.3d 99, 101 (2d Cir. 2013).

With the assistance of counsel, plaintiff filed his First Amended Complaint on July 1, 2013, and his Second Amended Complaint on July 24, 2013.  The differences between the two amended complaints are immaterial.  Both alleged new claims arising out of

---

[7]Freedom of Information Act, 5 U.S.C. § 552 (2012).

[8]Plaintiff and plaintiff's counsel also filed unsuccessful FOIA requests in late 2013, but did not seek our assistance pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997).  The critical issue before us is whether the complaint filed on July 1, 2013, was timely, so counsel's deficient efforts to discover the SROs' identities are irrelevant.

plaintiff's assignment to the MDC SHU, and both alleged claims against the SROs as John Doe defendants.

Defendants moved to dismiss the Second Amended Complaint on the grounds that plaintiff had failed to exhaust his administrative remedies and that plaintiff had failed to allege the personal involvement of each individual defendants.

We granted defendants' motion on exhaustion grounds with respect to the Eighth Amendment claims, because plaintiff had failed to raise his Eighth Amendment claims at either facility, and because Welch's actions did not inhibit plaintiff from filing a complaint regarding the allegedly deplorable conditions in the Otisville SHU.  However, we denied the motion with respect to the Fifth Amendment claims.  We held that plaintiff had raised a factual question of whether Welch had prevented plaintiff from filing grievance forms at Otisville, and we held that plaintiff properly exhausted his remedies at the MDC by gaining satisfaction through the administrative process.

We also dismissed the Second Amended Complaint as against all individual defendants except for the (then-unknown) SROs.[9] However, we determined that plaintiff had plausibly alleged personal involvement by the SROs, because each SRO was responsible

---

[9]Technically, we kept the two wardens (defendants Killian and Terrell) in the case for the sole purpose of aiding discovery of the SROs' identities. This accomplished, we now dismiss those defendants.

for reviewing plaintiff's confinement.  <u>See</u> 28 C.F.R. § 541.22(c) (2009 and 2010); <u>cf.</u> 28 C.F.R. § 541.26 (2014).

Discovery revealed that the SRO at Otisville was Lt. Frank Swaha, and that the SROs at the MDC were Lt. Ray Pennick (until September 18, 2010) and Lt. David Gonzalez (after September 18, 2010).

After learning the SROs' names, plaintiff sent a pre-motion letter asking for leave to file a Third Amended Complaint in order to name Lts. Swaha, Pennick, and Gonzalez in place of the John Doe SROs.  We expressed concern that such an amendment would be time-barred under Rule 15(c)(1)(C) (<u>see</u> <u>Barrow v. Wethersfield Police Department</u>, 66 F.3d 466 (2d Cir. 1995), <u>amended</u>, 74 F.3d 1366 (2d Cir. 1996)), and asked the parties to brief the question of whether the proposed amendment would be futile as time-barred.

### III. <u>DISCUSSION</u>

#### A.   <u>OVERVIEW</u>

While leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), "one good reason to deny leave to amend is when such leave would be futile," <u>Acito v. IMCERA Grp., Inc.</u>, 47 F.3d 47, 55 (2d Cir. 1995), such as when the proposed claims would be time-barred.  <u>See, e.g.</u>, <u>Ferring B.V. v. Allergan, Inc.</u>, 4 F. Supp. 3d 612, 618 (S.D.N.Y. 2014).

No federal statute defines the limitations period for a <u>Bivens</u> action,[10] so we borrow the three-year statute of limitations that applies to personal injury actions in New York.  <u>See</u> <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987).  Well over three years have passed since plaintiff was transferred from Otisville in 2010, so we must decide the extent to which plaintiff's proposed amendment would relate back to his earlier complaints and the extent to which those earlier complaints were themselves timely.

All three SROs concede that, under Rule 15(c)(1) and applicable New York law (C.P.L.R. 1024), the proposed amendment would relate back to the First Amended Complaint, dated July 1, 2013.  Because plaintiff filed that complaint within three years of entering the MDC SHU, Lts. Pennick and Gonzalez agree that all claims against them would be timely.

Lt. Swaha, however, argues that the proposed Third Amended Complaint would be untimely against him because (1) the proposed Third Amended Complaint would not relate back to the (timely) Original Complaint, and (2) although the proposed Third Amended Complaint would relate back to the First Amended Complaint, the First Amended Complaint was untimely with respect to the events at Otisville.

_____

[10] <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971) (recognizing a private cause of action for federal agents' violations of the Constitution).

In section III.B., we conclude that the proposed Third Amended Complaint would not relate back to the Original Complaint.   We agree with Lt. Swaha on the basis of three holdings.   First (III.B.1.i.), that plaintiff may not rely on Rule 15(c)(2) for relation-back because Lt. Swaha is not an "officer" of the United States within the meaning of that Rule.   Second (III.B.1.ii.), that plaintiff may not rely on Rule 15(c)(1)(C) or New York state law for relation-back, because Lt. Swaha did not constructively know of the suit or of plaintiff's "mistake" in suing other prison staff. Third (III.B.2.), that plaintiff may not rely on New York state law for relation-back, because Lt. Swaha and the originally named defendants were not unified in interest.

In section III.C., we conclude that the First Amended Complaint was timely.[11]   First (III.C.1.), Lt. Swaha's alleged failure to review plaintiff's SHU assignment was a continuing violation of Due Process, so that the limitations period did not begin to run until plaintiff was removed from the Otisville SHU, within three years of the First Amended Complaint.   Second (III.C.2.), tolling during the pursuit of administrative remedies may defeat the statute of limitations, independent of the

---

[11]Because the First Amended Complaint was filed on Monday, July 1, 2013, it is timely with respect to procedural violations committed on or after June 29, 2010.   See Gen. Constr. Law § 25-a(1) (extending statutory deadlines from weekend to following Monday).   Plaintiff was committed to the Otisville SHU for a period of time surrounding that date.

continuing violation doctrine.  Third (III.C.3), no other form of equitable tolling applies to the facts of this case.

The result of this analysis is that the proposed Third Amended Complaint is not futile because the First Amended Complaint may have been timely under either the continuing violation doctrine or the doctrine of administrative remedy tolling.

**B.**     **RELATION BACK TO THE ORIGINAL COMPLAINT**

    **1.**     **Relation Back Under Federal Law**

In general, federal law provides that a change to the naming of defendants relates back to an earlier complaint if three conditions are satisfied: (1) the amended complaint must "assert[] a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original [complaint]"; (2) within 120 days of the original filing, the new defendant must have "received such notice of the action that [he] will not be prejudiced in defending on the merits"; and (3) within the same 120-day period, the new defendant must have known (or it must be the case that the new defendant should have known) "that the action would have been brought against [him], but for a mistake concerning the proper party's identity."  Rule 15(c)(1)(B), (C).  When, however, the new defendant is the United States or a "United States officer or agency," the second and third of these requirements may

be satisfied in some circumstances by mailing timely process to the government.   Rule 15(c)(2).

There is no doubt that the proposed claims against Lt. Swaha arose out of the same occurrences that the Original Complaint alleged.   The disputed issues are whether the government-specific notice provisions of Rule 15(c)(2) apply to Lt. Swaha and whether plaintiff satisfied the standard notice provisions of Rule 15(c)(1)(C).

### i.   **Rule 15(c)(2)**

Rule 15(c)(2) would permit plaintiff's complaint against Lt. Swaha to relate back to the Original Complaint so long as (1) Swaha is a "United States officer," (2) "process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to [Swaha]"; and (3) such delivery or mailing occurred within the 120-day service period of Rule 4(m).[12]

Lt. Swaha argues that he is an "employee" and not an "officer" within the meaning of Rule 15(c)(2), so that Rule 15(c)(2) does not

---

[12]Although it is not clear from the record whether plaintiff actually delivered or mailed process to the United States attorney, Lt. Swaha does not raise this point, and has therefore forfeited it.   This is reasonable under the peculiar circumstances of this case, in which we dismissed the Original Complaint before the 120-day service period had run, and in which the U.S. Attorney's Office appeared (albeit before the Second Circuit) within 120 days of plaintiff's filing.   See Acknowledgment and Notice of Appearance, J.S. v. T'Kach, No. 11-1287 (2d Cir. Apr. 18, 2011), ECF No. 5.
Lt. Swaha also does not raise the question, which we need not reach, of whether Rule 15(c)(2) requires plaintiff to show that Swaha was omitted from the Original Complaint because of a "mistake concerning the proper party's identity," Rule 15(c)(1)(C)(ii).

apply to this case.   Plaintiff, on the other hand, understands "officer" to mean any agent of the federal government, including Lt. Swaha.

We have found no cases that examine whether Rule 15(c)(2) makes a meaningful distinction between "officers" and "employees," although some courts have discussed whether this Rule distinguishes between official-capacity and individual-capacity suits.[13]  Compare Montgomery v. Johnson, No. 7:05CV00131, 2008 WL 4452465, at *6-7, 2008 U.S. Dist. LEXIS 74256, at *18-24 (W.D. Va. Sept. 27, 2008) (holding that Rule 15(c)(2) applies to an individual-capacity suit), with Lojuk v. Johnson, 853 F.2d 560, 562-63 (7th Cir. 1988) (declining to apply Rule 15(c)(2)'s predecessor to an individual-capacity suit); see also Carcamo-Lopez v. Does 1-20, No. EP-09-CV-371-KC, 2011 WL 318148, at *3-5, 2011 U.S. Dist. LEXIS 8818, at *7-13 (W.D. Tex. Jan. 29, 2011) (applying the Rule to an individual-capacity case against a federal agent); Jean-Louis v. Clifford, No. Civ.A.06CV3972(DMC), 2009 WL 2905462, at *3-4, 2009 U.S. Dist. LEXIS 82020, at *7-11 (D.N.J. Sept. 9, 2009) (same); Pope v. Bond, 641 F. Supp. 489, 495 (D.D.C. 1986) (same); cf. Ish Yerushalayim v. United States, 374 F.3d 89, 92 n.2 (2d Cir. 2004)

---

[13]Lt. Swaha has not pressed a distinction between official-capacity and individual-capacity suits, and we need not decide whether to recognize such a distinction.  While Lojuk is correct that the Advisory Committee created Rule 15(c)(2)'s predecessor to remedy a perceived injustice in the context of official-capacity suits, Montgomery is equally correct that there is no textual basis for restricting Rule 15(c)(2) to the official-capacity context.

(noting that the plaintiff in a <u>Bivens</u> case could not take advantage of the Rule 15(c)(2)'s predecessor because he had not given notice to the U.S. Attorney or the Attorney General).

For several reasons, we agree with Lt. Swaha's reading.

<u>First</u>, we compare the text of Rule 15(c)(2) with language found elsewhere in the Federal Rules of Civil Procedure. Most significantly, Rule 4(i)(2)–(4) repeatedly uses the phrase "officers and employees" to describe how to serve any person who works in the service of the United States. The inclusion of both "officers" and "employees" in Rule 4 suggests that the drafters of Rule 4 understood "officers" and "employees" to be different (though perhaps overlapping) categories of people, thus supporting Lt. Swaha's narrow reading of "officers" in Rule 15. This reading also avoids turning the word "employees" in Rule 4 (and elsewhere) into surplusage. <u>See also</u> Fed. R. App. P. 4(a)(1)(B)(iii)–(iv) (extending certain deadlines in cases where a "United States officer or employee" is a party); Fed. R. Bankr. P. 6005 ("No officer or employee of the Judicial Branch of the United States or the United States Department of Justice shall be eligible to act as appraiser or auctioneer."); Fed. R. Evid. 902(1)–(2) (providing that a public record may be self-authenticating if it bears an attested seal of an "officer" of the United States or if it is

signed without seal by an "officer or employee" of the United States).[14]

Second, our interpretation is more compatible with the structure of Rule 4(i), which governs service upon federal officers and employees.

Imagine that Alice and Bob both file individual-capacity claims alleging a tort by Carol, a low-level federal employee. Alice names Carol as a defendant, but Bob negligently fails to name Carol. Both Alice and Bob properly serve the United States Attorney, but both (without good cause) fail to serve Carol within the time allotted by Rule 4. After the statute of limitations has also expired, both Alice and Bob attempt to serve their complaints (or, in Bob's case, to amend and serve) so as to prosecute their claims against Carol.

Rule 4(i)(4) makes it clear that Alice, who named Carol in her complaint, may not do so. A plaintiff in an individual-capacity suit may serve the United States late so long as she served the

---

[14]Lt. Swaha's citation of Rule 25 gives us some pause. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.") (emphasis added); Fed. R. Civ. P. 17(d) (similar text). It is not clear whether a non-officer (according to Lt. Swaha's proposed definition) is ever a proper defendant in an official-capacity suit. However, if such a person were the proper defendant in an official-capacity suit, it would be contrary to the purpose of Rule 25(d) to withhold automatic substitution after the death of the employee. See Fed. R. Civ. P. 25, 1961 Amend., Advisory Committee Notes. Nevertheless, we need not resolve this uncertainty. Rule 4 is the closer comparison with Rule 15, because both Rule 15 and Rule 4 deal with the timing and service of pleadings, and because the text of Rule 15 repeatedly refers to Rule 4.

individual defendant on time, but not the other way around.  Under plaintiff's reading of Rule 15(c)(2), however, Bob <u>would</u> be allowed to amend his complaint to include Carol.  This is an incongruous pair of outcomes, since Bob's original complaint was the more defective of the two.

<u>Third</u>, our interpretation does justice to the history of Rule 15(c)(2), which was created as a specific solution to a specific problem, unconnected to individual suits against federal agents. The predecessor to Rule 15(c)(2) was added "to take care of situations where a person denied federal benefits did not file within the appropriate period . . . against the federal officer denying the benefits but instead wrongly sued an improper governmental defendant."  <u>Lojuk</u>, 853 F.2d at 563; <u>see</u> Fed. R. Civ. 15, 1966 Amend., Advisory Committee Notes.  We would be straying far afield from this purpose if we allowed Rule 15(c)(2) to revive an action for damages against an individual employee of the federal government.

<u>Finally</u>, in the context of the Appointments Clause (U.S. Const. art. II, § 2, cl. 2), the Supreme Court has interpreted the phrase "Officers of the United States" to mean a person who "exercis[es] significant authority pursuant to the laws of the United States," in contrast to employees who are "lesser functionaries subordinate to officers."  <u>Buckley v. Valeo</u>, 424 U.S.

1, 126 & n.162 (1976). This is a sensible description of the difference between an "officer" and an "employee"; thus, where the Federal Rules draw a clear distinction between "officers" and "employees," a similar test should delimit the two categories.

Applying our test, we consider Lt. Swaha, who does not exercise "significant authority" to be an "employee" rather than an "officer." Lt. Swaha's discretion in his capacity as the Otisville SRO was limited to reviewing the status of inmates in the SHU, and was appointed to served in that capacity at the direction of the warden. See 28 C.F.R. § 541.16(d) (2009 and 2010).

Because Rule 15(c)(2) does not apply to a suit against Lt. Swaha, we conclude that the proposed Third Amended Complaint would relate back, if at all, to the Original Complaint through the ordinary application of Rules 15(c)(1)(C) (federal law) and 15(c)(1)(A) (state law).

### ii. **Rule 15(c)(1)(C)**

An amended complaint that changes a defendant's name relates back to a prior complaint under the federal standard of Rule 15(c)(1)(C) only if the new defendant, "within the [120-day] period provided by Rule 4(m)[,] . . . received such notice of the action that [he] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought

against [him], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii).

We assume, for the sake of argument, that plaintiff's decision to name Otisville employees Donna Hill and Lou Salobba as defendants in the Original Complaint sprang from a "mistake[n]" belief that those two employees were personally responsible for plaintiff's detention in the SHU.  Under this assumption, the critical question is one of notice and knowledge.

Plaintiff does not maintain that Lt. Swaha actually knew of this suit or of plaintiff's mistake in naming other Otisville employees as defendants.  Instead, plaintiff relies on a theory of constructive notice through the U.S. Attorney's Office.  This theory depends on two premises.  First, that the U.S. Attorney's Office should be charged with knowledge of Part 521 of Title XXVIII of the 2009 and 2010 editions of the Code of Federal Regulations, and therefore should have known that Lt. Swaha should have been named in the suit.  Second, that the knowledge of the U.S. Attorney's Office should be imputed to Lt. Swaha.  We do not accept either premise.

To the first point, the cases cited by plaintiff charged the U.S. Attorney's Office with knowledge of legal points that should be old hat to attorneys who deal with civil litigation against the federal government.  See Soto v. Brooklyn Corr. Facility, 80 F.3d

34, 36 (2d Cir. 1996) (charging government with awareness that a complaint without a <u>Monell</u>[15] claim should have been filed against an individual officer who was mentioned within the complaint); <u>cf.</u> <u>Walsh v. Franco</u>, 849 F.2d 66, 68 (2d Cir. 1988) (denying qualified immunity from a state employee who violated "basic, unquestioned constitutional rights").

These cases do not stand for the proposition that knowledge of the entire 200-volume Code of Federal Regulations should be imputed to the U.S. Attorney's Office. <u>Cf.</u> <u>Heien v. North Carolina</u>, 135 S. Ct. 530, 536 (2014) ("reasonable men make mistakes of law"). The U.S. Attorney's Office is under no obligation to craft plaintiff's complaint for him, and the issues before the Second Circuit in 2011-13 provided no occasion for the Office to delve into an obscure point of internal prison procedure.

Furthermore, even if the U.S. Attorney's Office knew that an SRO was the proper defendant, there was no reason for the Office to know that the Otisville SRO was actually someone other than the individuals named in the Original Complaint. The Original Complaint alleged that a "Unit Manager" at Otisville (former defendant Donna Hill) told plaintiff that his appeal to the an administrator in Washington had been denied and that he was to be

---

[15] <u>Monell v. N.Y.C. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978) (policy or custom is necessary element of a claim against a municipality under title 42, section 1983 of the U.S. Code).

placed in the SHU.  <u>See</u> Compl. ¶¶ 11-12.  Nothing about plaintiff's narrative in the Original Complaint made it evident that anyone besides Hill was the Otisville SRO.

To plaintiff's second point, an attorney's knowledge that a suit is pending may be imputed to the attorney's later client only if there is "some showing that the attorney(s) knew that the additional defendant[] would be added to the existing suit." <u>Gleason v. McBride</u>, 869 F.2d 688, 693 (2d Cir. 1989).  For much the reasons as those stated above, we have no reason to think that the U.S. Attorney's Office actually knew that Lt. Swaha would be added to a case that had already been dismissed by the time that the Office filed its appearance.

### 2.  **Relation Back Under State Law**

Finally, an amended complaint relates back if "the law that provides the applicable limitations law allows relation back." Fed. R. Civ. P. 15(c)(1)(A).  Here, the applicable law is that of New York.[16]  <u>See</u> <u>Chin</u>, 833 F.2d at 24.

---

[16]Lt. Swaha has not raised the issue of whether Rule 15(c)(1)(A) applies when a state-law limitations rule is adopted as a federal statute of limitations.  <u>Cf.</u> <u>Williams v. United States</u>, No. 07-cv-3018 (RJS)(THK), 2010 WL 963474 at n.9, 2010 U.S. Dist. LEXIS 25102 at n.9 (S.D.N.Y. Feb. 25, 2010) (recommending application of Rule 15(c)(1)(A) in such a circumstance), <u>adopted</u>, 2010 WL 963465, 2010 U.S. Dist. LEXIS 25170 (S.D.N.Y. Mar. 16, 2010) (applying clear error review).  This is not inappropriate, as we normally import the entire body of state limitations law into the federal setting unless state law is inconsistent with federal policy.  There is nothing offensive to federal policy here: New York's rule is reasonable, and the Federal Rules invite federal courts to apply local relation-back rules in at least some contexts.

New York allows a complaint against a new party to relate back when (1) the new claim arose out of the same "conduct, transaction or occurrence" as the original allegations; (2) "the new party is 'united in interest' with the original defendant"; and (3) "the new party knew or should have known that," but for a "mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." Buran v. Coupal, 661 N.E.2d 978, 981 (N.Y. 1995) (quoting Brock v. Bua, 443 N.Y.S.2d 407, 412, 83 A.D.2d 61, 66 (2d Dep't 1981)).

The proposed Third Amended Complaint fails the second and third prongs of New York's test.

Addressing the third prong first, the Third Amended Complaint fails the New York test for the same reasons that it fails the federal test: the Original Complaint did not give any reason for Lt. Swaha (or any attorney) to think that the action should have been brought against Lt. Swaha.

As for the second prong, Lt. Swaha is not "united in interest" with any person named in the Original Complaint. "Defendants are united in interest with one another only when their relationship with each other is such that their interest in the subject-matter of the actions is such that the defendants stand or fall together and that judgment against one will similarly affect the other." LeBlanc v. Skinner, 955 N.Y.S.2d 391, 397–98, 103 A.D.3d 202, 210

(2d Dep't 2012) (internal brackets and quotation marks omitted). But "defendants are not united in interest if there is the mere possibility that the new party could have a different defense than the original part." Id.

Here, there is much more than a "mere possibility" that the action against Lt. Swaha will "stand or fall" separate from the action against the defendants named in the Original Complaint. Plaintiff's action against those other defendants has already fallen for lack of personal involvement, while plaintiff's action against Lt. Swaha is (save perhaps for the statute of limitations) still viable.

We therefore conclude that the proposed Third Amended Complaint against Lt. Swaha does not relate back to the Original Complaint, whether under the government-specific standard of Rule 15(c)(2), the federal standard of Rule 15(c)(1)(C), or the New York standard of Rule 15(c)(1)(A).

C.  **RELATION BACK TO THE FIRST AMENDED COMPLAINT**

Because the proposed Third Amended Complaint relates back only as far as the First Amended Complaint, we must examine whether the First Amended Complaint was timely in its own right.

As described above, plaintiff was in the SHU at Otisville from April 9, 2010, until July or August 2010.  He filed the First Amended Complaint on July 1, 2013, and the relevant limitations

period is three years. Thus, the First Amended Complaint's timeliness depends on precisely when plaintiff's claim accrued and whether plaintiff's claim was tolled for any amount of time.

### 1.   Accrual and the Continuous Violation Doctrine

Lt. Swaha argues that plaintiff's <u>Bivens</u> action first accrued on April 19, 2010, when plaintiff became aware of being moved to the SHU, <u>see, e.g.</u>, <u>Pinaud v. Cty. of Suffolk</u>, 52 F.3d 1139, 1156 (2d Cir. 1995), so that the statute of limitations ran on the entire course of events at Otisville on April 19, 2013. Plaintiff, on the other hand, argues that his <u>Bivens</u> action did not accrue until his departure from Otisville in July or August 2010, because Lt. Swaha's failure to review plaintiff's status constituted a "continuing violation" of plaintiff's Due Process rights. Under this theory, the First Amended Complaint was timely because the statute of limitations did not run on any part of the alleged Due Process violation until July or August 2013.

The "continuing violation doctrine" provides that a suit over a sequence of events is timely so long as the suit is timely with respect to any of the events. This doctrine is native to the context of hostile work environment claims under Title VII, and applies more generally when a course of conduct can be said to produce a single unlawful practice. <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 118 (2002).

We must first consider the preliminary question of whether the continuing violation doctrine can ever apply to a <u>Bivens</u> action. Lt. Swaha argues that the doctrine can never apply to a <u>Bivens</u> action because the statute of limitations for a <u>Bivens</u> action commences when a plaintiff discovers his injury, rather than when the injury occurs (as is the case for a Title VII claim).   Lt. Swaha's argument finds some support in <u>Mix v. Delaware & Hudson Railway Co.</u>, 345 F.3d 82 (2d Cir. 2003), in which the Circuit declined to apply the continuing violation doctrine to a claim under the FELA[17] for much the same reasons now advocated by Lt. Swaha.   <u>Cf.</u> <u>Barbaro v. United States</u>, 521 F. Supp. 2d 276, 280–84 (S.D.N.Y. 2007) (reviewing <u>Mix</u> and declining to apply continuing violation doctrine to the particular <u>Bivens</u> action before the court).

Nevertheless, the Second Circuit has determined that the continuing violation doctrine may apply to a claim arising under section 1983.   <u>See</u> <u>Shomo v. City of New York</u>, 579 F.3d 176 (2d Cir. 2009).   Whatever force the reasoning in <u>Mix</u> might have once carried, there is no doubt after <u>Shomo</u> that the continuing violation doctrine is available in at least some <u>Bivens</u> cases, because general section 1983 precedent typically carries over freely to <u>Bivens</u>.   <u>See, e.g.</u>, <u>J.S.</u>, 714 F.3d at 103 (citing <u>Shomo</u>

---

[17]Federal Employers' Liability Act, 45 U.S.C. §§ 51–60.

for a procedural proposition); <u>Chin</u>, 833 F.2d at 24 (reviewing cases and noting a "general trend . . . to incorporate § 1983 law into <u>Bivens</u> suits").

Having concluded that the continuing violation doctrine can apply to <u>Bivens</u> cases as a general matter, we further conclude that the doctrine may well apply to the facts of this case.

<u>First</u>, a Due Process claim over SHU confinement is similar in some respects to a hostile work environment claim. A brief stint in the SHU is not enough to support a Due Process claim, just as a single offensive act is not enough to support a hostile work environment claim. But a long detention in the SHU will support a Due Process claim, just as a severe or pervasive regime of harassment will support a hostile work environment claim. For this reason, there is far greater reason to apply the continuing violation doctrine here than there was in <u>Barbaro</u>. In <u>Barbaro</u>, the court found that each deliberately indifferent refusal to render medical care represented a discrete, actionable violation of the Eighth Amendment. <u>See</u> 521 F. Supp. 2d at 281–82. Here, though, both plaintiff's injury and Lt. Swaha's alleged failure to review plaintiff's status persisted continuously until plaintiff left Otisville.

<u>Second</u>, it is clear after <u>Shomo</u> that the continuing violation doctrine applies when a series of discrete acts are linked together

through a single policy or custom. <u>See</u> 579 F.3d at 181 (analogizing such a policy-based claim to a discrimination claim and citing <u>Cornwell v. Robinson</u>, 23 F.3d 694, 703 (2d Cir. 1994)); <u>see also</u> <u>Cancel v. Mazzuca</u>, No. 01-cv-3129 (NRB), 2003 WL 1702011, at *4, 2003 U.S. Dist. LEXIS 4888, at *14-15 (S.D.N.Y. Mar. 28, 2003) (applying continuing violation doctrine to inmate's First Amendment claim of religious discrimination).  As a result, the Circuit allowed the plaintiff to replead his claims against correctional supervisors who may have known of a series of constitutional violations.  <u>Shomo</u>, 579 F.3d at 184.

In this case, it appears that plaintiff will be able to plead that Lt. Swaha consistently failed to review plaintiff's status. This continuous failure plausibly suggests that Lt. Swaha was acting according to a single custom (either his own personal practice or that of the Otisville penitentiary) of failing to adhere to the BOP's mandatory review schedule. (Or, it may be that Lt. Swaha simply did not recognize that the normal review procedures applied to the unusual case of an inmate who had been removed from witness protection.)

<u>Third</u>, our conclusion is consistent with cases involving assignments to particular prison units.

In <u>Bistrian v. Levi</u>, for example, the court applied the continuing violation doctrine to a prisoner's allegation that

prison officials had repeatedly assigned him to a SHU, where he was repeatedly attacked by violent inmates.  <u>See</u> Civil No. 08-3010, 2010 WL 3155267, at *6, 2010 U.S. Dist. LEXIS 77348, at *20-22 (E.D. Pa. July 29, 2010), <u>aff'd in relevant part</u>, 696 F.3d 352 (3d Cir. 2012).  The district court reasoned that

> the four instances of SHU confinement are the same type of conduct, and Plaintiff alleges that he was repeatedly placed in the SHU for the same reason, that is, violations of telephone use policies.  The time between the periods of confinement in the SHU and the attacks on Plaintiff by other inmates were relatively brief.

<u>Id.</u>; <u>see also</u> <u>Jama v. U.S. INS</u>, 343 F. Supp. 2d 338, 381 (D.N.J. 2004) (applying continuing violation doctrine in light of "evidence that the conditions and conduct of which . . . plaintiffs complain [i.e., poor living conditions at an INS facility, torture, beatings, etc.] extended into the two year period . . . and constitute continuing offenses").

Here, the case for finding a continuing violation is even more compelling than in <u>Bistrian</u>, as plaintiff was confined to the SHU for one continuous period rather than four closely-spaced instances.

<u>Fourth</u>, this case is distinguishable from cases in which courts have declined to apply the continuing violation doctrine.

Several cases have declined to treat placements in successive institutions as a single continuous violation, because different prisons have different decision-makers and different practices. See, e.g., Fogle v. Slack, 419 F. App'x 860, 864-65 (10th Cir. 2011); McIntosh v. Lappin, Civil Action No. 11-cv-01150-PAB-CBS, 2012 WL 4442766, at *14-15 & n.14, 2012 U.S. Dist. LEXIS 138137, at *45-49 & n.14 (D. Colo. Aug. 13, 2012) (report and recommendation), adopted in relevant part, 2012 WL 4442760, 2012 U.S. Dist. LEXIS 138138 (D. Colo. Sept. 26, 2012); Silverstein v. Fed. Bureau of Prisons, Civil Action No. 07-cv-02471-PAB-KMT, 2011 WL 4552540, at *9, 2011 U.S. Dist. LEXIS 112937, at *26-27 (D. Colo. Sept. 30, 2011), aff'd, 559 F. App'x 739 (10th Cir. 2014).  This rule would bar plaintiff from relying on his placement at MDC to make out a continuing violation at Otisville, but plaintiff does not do so. Plaintiff properly relies only on Lt. Swaha's own course of conduct at Otisville.

Courts have also declined to apply the continuing violation doctrine in cases challenging a single decision with long-lasting effects.  For example, a prison's denial of an inmate's request for a religious diet is a one-time event, even if the denial prevents the prisoner from receiving a religious diet throughout the term of his sentence.  Watkins v. Haynes, No. CV 212-050, 2013 WL 1289312, at *4-5 (S.D. Ga. Mar. 27, 2013); see also Matthews v. Wiley, 744

F. Supp. 2d 1159, 1169–70 (D. Colo. 2010) (treating a transfer to administrative segregation as a one-time event, where plaintiff had not alleged a continuing duty to review).  Here, plaintiff has not simply alleged that his initial placement in the SHU was wrongful, but that Lt. Swaha consistently failed in his ongoing duty to review plaintiff's assignment.  Cf. Georgacarakos v. Wiley, Civil Action No. 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *12, 2008 U.S. Dist. LEXIS 69144, at *35-36 (D. Colo. Sept. 12, 2008) (finding claim timely when it was "not clear . . . how frequently [the plaintiff's] eligibility for a less-secure classification [wa]s revisited").

Finally, some courts have barred a claim when the plaintiff failed to allege that the particular defendant committed any wrongful act or omission within the limitations period.  See, e.g., Shomo, 579 F.3d at 183-84 (affirming denial of leave to amend with respect to doctors who did not allegedly commit wrongful acts within the limitations period); Crenshaw v. Syed, No. 9:10-CV-0244 (GLS/GHL), 2011 WL 2975687, at *3-4, 2011 U.S. Dist. LEXIS 79490, at *8-12 (N.D.N.Y. Mar. 8, 2011) (report & recommendation) (same), adopted, 2011 WL 2975775, 2011 U.S. Dist. LEXIS 79519 (N.D.N.Y. July 21, 2011).  This is clearly not the case here, where plaintiff alleges that Lt. Swaha failed to review plaintiff's assignment at least once within two years of the First Amended Complaint.

In conclusion, it appears that plaintiff can plead sufficient facts to make the continuing violation doctrine available to him. Thus, plaintiff may amend his complaint to plead claims with respect to his entire assignment to the Otisville SHU.[18]

## 2.   **Tolling During Administrative Remedies**

It is also possible that equitable tolling would also save some or all of plaintiff's pre-July 2010 claim, even if the continuing violation doctrine were unavailable. This approach provides an alternative basis for holding that plaintiff's proposed amendment is not futile.

It is well established that an inmate's resort to mandatory administrative grievance procedures tolls the statute of limitations on a <u>Bivens</u> action. <u>See</u> <u>Gonzalez v. Hasty</u>, 651 F.3d 318, 323-24 (2d Cir. 2011); <u>cf.</u> Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under . . . any . . . Federal law[] by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted."). This

---

[18]We make this finding on the basis of the pleaded facts. After discovery, Lt. Swaha is free to re-argue that any violation was not in fact continuous (perhaps, for example, if Lt. Swaha at least occasionally reviewed plaintiff's SHU assignment). Yet even if the continuous violation doctrine does not apply, at least some of plaintiff's accusations against Lt. Swaha would be timely, for "a freestanding violation may always be charged within its own charging period regardless of its connection to other violations." <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618, 636 (2007), <u>abrogated on other grounds</u>, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (Jan. 29, 2009) (amending scattered sections of 29 and 42 U.S.C.); <u>accord</u> <u>Mix</u>, 345 F.3d at 90 ("A plaintiff may recover for distinct injuries he suffers during the three-year period preceding the suit.").

tolling doctrine, then, requires us to examine whether and when plaintiff engaged in the administrative grievance process at Otisville.

The first step in BOP's Administrative Remedy Program is informal resolution. <u>See</u> 28 C.F.R. § 542.13(a) ("[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."). Informal resolution is a critical component of BOP's Administrative Remedy Program, because it allows inmates and staff to resolve minor problems without involving senior BOP staff. For this reason, we have no doubt that time spent at the informal resolution stage contributes to the period of equitable tolling under <u>Gonzalez</u>.

The harder question is whether plaintiff actually undertook informal resolution. Normally, an inmate accomplishes "informal resolution" by submitting a BP-8 form, but it is undisputed that plaintiff filed no forms at Otisville regarding his detention in the SHU. Nevertheless, courts have held that other reasonable avenues of informal resolution can constitute part of the tolling time. <u>See, e.g.</u>, <u>Bell v. Zuercher</u>, Civil Action No. 10-72-ART, 2011 WL 5191800, at *4, 2011 U.S. Dist. LEXIS 125927, at *10–11 (E.D. Ky. Oct. 31, 2011) (commencing the tolling period on the date when the plaintiff met informally with his counselor); <u>Howard v.</u>

<u>Mendez</u>, 304 F. Supp. 2d 632 (M.D. Pa. 2004) (commencing the tolling period on the date when the plaintiff complained that his counselor would not assist him in completing a BP-8).  It would offend our sense of equity to withhold <u>Gonzalez</u> tolling from an inmate who was, for reasons beyond his control, unable to file standard forms. We therefore conclude, on the facts alleged in this case, that the statute of limitations was tolled during any period when plaintiff reasonably persisted in raising complaints to his counselor.

In so holding, we emphasize that stray discussions with staff will not normally toll the statute of limitations under <u>Gonzalez</u>. If an institution requires an inmate to conduct informal resolution by submitting a BP-8 form, and makes that form available to the inmate, then the inmate must follow this procedure if his claim is to be tolled.  Likewise, if an inmate abandons his grievance, inexcusably misses deadlines, or inexcusably fails to follow mandatory procedures, then tolling will stop when he abandons his grievance, misses deadlines, or stops following procedures.

We also emphasize that nothing in the pleadings suggests that plaintiff ever complained to Lt. Swaha or that Lt. Swaha otherwise knew about plaintiff's grievance.  This apparent lack of knowledge does not affect plaintiff's entitlement to tolling under <u>Gonzalez</u>, and does not alter the continuous nature of the alleged Due Process violation.  It may, however, affect whether Lt. Swaha is entitled

to qualified immunity.  If a reasonable SRO would not have known on his own that he was required to review all SHU assignments regularly, then Lt. Swaha may be immune unless he knew of plaintiff's specific demand; but if a reasonable SRO should have known to review all SHU assignments, then Lt. Swaha's actual knowledge is irrelevant.

### 3.   **Other Equitable Tolling**

Plaintiff also argues that the statute of limitations should be tolled because BOP failed to respond meaningfully to plaintiff's 2010 FOIA request for the name of the Otisville SRO.  We disagree. Assuming that the BOP's response was inadequate for plaintiff's purposes, plaintiff could nevertheless have sued the Otisville SRO as a "John Doe" defendant or could have indicated in the text of the Original Complaint that he wished to bring a claim against the unknown person responsible for routinely reviewing his SHU assignment.  Cf. Blaskiewicz v. Cty. of Suffolk, 29 F. Supp. 2d 134, 140 (E.D.N.Y. 1998) (applying doctrine of equitable tolling

when plaintiff filed a John Doe complaint after making a fruitless FOIA request).  Doing so would have put the government on notice of plaintiff's claims, and may have permitted earlier discovery of the SRO's identity.

## CONCLUSION

Plaintiff's proposed Third Amended Complaint is not futile against any of the SROs, although plaintiff must ultimately prove a factual basis for the continuing violation doctrine or for tolling pursuant to Gonzalez v. Hasty.  Accordingly, we grant leave for plaintiff to amend his complaint within 14 days to include Due Process claims against the three SROs.[19]

The Clerk of Court is directed to terminate all current defendants except John Doe No. 1 and John Doe No. 3.

**SO ORDERED.**

Dated:    New York, New York
          July 21 , 2015

                                           NAOMI REICE BUCHWALD
                                           UNITED STATES DISTRICT JUDGE

---

[19]Plaintiff may, of course, plead his dismissed claims as well, for preservation.

-32-